### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KALSHIEX LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>COMMODITY FUTURES TRADING<br>COMMISSION,<br>    Defendant. | No. 23-cv-03257-JMC<br><br>Plaintiff's Opposition to<br>Defendant's Emergency Motion<br>for Stay |

### OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR STAY

The Commission's preemptive emergency motion for a stay (ECF 48 ("Mot.")) is meritless. From the outset, Kalshi emphasized "this case is time sensitive," with "meaningful relief … only possible if the case is adjudicated reasonably in advance of the 2024 congressional elections." ECF 14 at 2. Yet Kalshi took no shortcuts. It did not demand a preliminary injunction on a hasty timeline. Instead, the Commission assembled the full record; the parties filed robust merits briefs; and the Court held a lengthy oral argument. The goal, from the start, was to ensure that the Court could reach—and have full confidence in—a final judgment by "September 6, 2024, which is 60 days before the November 2024 congressional elections." *Id.* The Court adhered to the precise timeline the parties have expected since last November, and has now agreed that the Commission acted unlawfully by blocking Kalshi's contracts.

Because the Court's Order flowed from full consideration of the merits in the ordinary course, there is no reason to take the extraordinary step of suspending its effect now. The Commission lost, fair and square, on the law. It should not be allowed to snatch a procedural victory from the jaws of defeat by running out the clock.

The traditional stay factors all point in the same direction.  On the merits, this Court's Order simply did what the law compelled in recognizing that the Commission exceeded its statutory authority when it barred Kalshi's contracts.  While the Court's memorandum opinion will detail the reasons why, anyone reading the briefs and oral argument transcript would readily grasp the Order's core, legally correct basis.

As to irreparable harm, only *Kalshi* would suffer it.  After unlawfully delaying these contracts for over a year (and previously obstructing an earlier iteration of the contracts by stringing out review), the Commission would now swallow at least two weeks of the little time still remaining before the 2024 elections.  That delay—which the agency would assuredly try to parlay into another, then another, until it is too late—would be devastating for Kalshi, which has staked its future on this litigation and these markets.

Meanwhile, the CFTC faces no such harm.  The Commission has long known the timeline for a decision in this case, and has had ample opportunity to prepare for an adverse outcome.  Meanwhile, election prediction markets are up and running on both PredictIt and the unregulated exchange Polymarket, causing no harm to the public but accumulating market share at the expense of law-abiding Kalshi.

If the Commission ultimately decides to pursue a quixotic appeal, it is free to seek a stay pending appeal in the ordinary course.  But there is no legitimate basis for two-plus weeks of delay *before the agency even decides whether to appeal*.  Rather, as the election nears, Kalshi and the public deserve access to the contracts that the CFTC has blocked for too long already.  The Court should deny the motion.

## ARGUMENT

I.   **THE CFTC IS NOT ENTITLED TO AN EMERGENCY STAY.**

This Court will stay an order "only in exceptional circumstances." *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 109 (D.D.C. 2018). In assessing a stay request, this Court asks "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). None of these factors favors a stay. Nor has the Commission carried its "burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34.

1.   ***Merits.*** The likelihood-of-success factor is critical; when the movant cannot satisfy it, it is "arguably fatal" to a stay request. *Citizens for Responsibility & Ethics in Wash. ("CREW") v. FEC*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (per curiam); *see also Labrador v. Poe*, 144 S. Ct. 921, 928–34 (2024) (op. of Kavanaugh, J.). The Commission's inability to satisfy this requirement should be fatal here.

The dispositive legal question that the Court decided in its Order was whether the CFTC violated the law when it banned Kalshi's Congressional Control Contracts. By granting Kalshi's motion for summary judgment seeking vacatur of that order, the Court determined the answer was yes. The Order ruled that the CFTC's "order prohibiting [Kalshi] from listing its congressional control contracts for trading" was "**VACATED**." ECF 47. Importantly, that was not a tentative or preliminary decision

made on a cramped timeline or based on an incomplete record—rather, it was a final judgment that followed full briefing from the parties and *amici*, and an oral argument that allowed the Court to probe the parties' positions in depth.

The Commission makes no effort to show a likelihood of success on the merits, complaining that it cannot do so in the absence of the Court's memorandum opinion. Mot. 3.  But there is no mystery: As Kalshi set forth in its briefs and at oral argument, the Commission's claim that event contracts on elections somehow involve "unlawful activity" or "gaming" would make nonsense of the statutory scheme.  The Commission was given opportunity after opportunity to defend its construction of the statute— and it failed each time.  At this juncture, the CFTC cannot seriously claim a likelihood of success on the merits, or even that an appeal would present a serious question.

Indeed, the CFTC has no real hope of success should it hazard an appeal.  The D.C. Circuit recognizes that statutory interpretation begins with the text—and "must end there if the text is clear." *Force v. Islamic Republic of Iran*, 610 F. Supp. 3d 216, 222 (D.D.C. 2022).  The D.C. Circuit has also explained that statutory structure and context are crucial to any interpretive exercise.  *See, e.g.*, *United States v. Slatten*, 865 F.3d 767, 807 (D.C. Cir. 2017); *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 708 (D.C. Cir. 2009).  And as the Supreme Court recently clarified, statutory interpretation lies in the province of "courts, not agencies." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2261 (2024).  In light of these principles, the likelihood that the D.C. Circuit would conclude that Kalshi's contracts contingent on control of Congress "involve … unlawful activity" or "involve … gaming" is remote indeed.

In short, the text and structure of the statute compelled the Court's Order. The text and structure of the statute would likewise doom any CFTC appeal.

**2.** ***Irreparable harm.*** Irreparable harm to the movant must be "certain and great" to justify a stay. *CREW*, 904 F.3d at 1019. Here, the CFTC barely bothers to explain its supposed injury—much less prove irreparable, certain, great harm— and offers no reason to think that allowing Kalshi to list its contracts for the next two weeks would pose an "exceptional" threat. *Dunlap*, 319 F. Supp. 3d at 109.

What little the CFTC does say on irreparable harm is unpersuasive and "fail[s] to rise beyond the speculative level." *CREW*, 904 F.3d at 1019. *First*, the Commission worries that "other DCMs" might propose different "election contracts." Mot. 3. Even if that were not completely speculative, it is not clear why it would matter—if those contracts are lawful, then their listing poses no irreparable harm. In all events, this is a red herring. The Court's Order vacates just one agency action: the September 23, 2023 order banning Kalshi's Congressional Control Contracts. As such, staying the Order would have no legal impact on other hypothetical contracts.

*Second*, the CFTC says that, if it later succeeds on appeal, it "has very limited recourse to cease trading or otherwise unwind the contracts." Mot. 3. But "limited" is not the same as "none." In fact, the CFTC can order the unwinding of contracts, and has done so before. And it retains potent enforcement authority over derivatives markets and the contracts that trade on them. *See generally, e.g.*, 17 C.F.R. 40.2(c) (authority to scrutinize self-certifications); 7 U.S.C. § 12a(7) (outlining CFTC's broad powers to oversee conduct of registered exchanges).

Tellingly, the CFTC does not even commit to pursue an appeal at all.  *See* Mot. 3 (noting that the agency has yet "to make an informed decision about whether to appeal").  Apparently, it might decide the effects of Kalshi's victory are not so dire after all—and the Commission supposedly requires *two full weeks* after the release of the Court's memorandum opinion just to make that judgment call.  That equivocation and leisurely timeline makes it impossible to take seriously the notion that a stay of the Order is needed to prevent irreparable harm.  Instead, it exposes the CFTC as returning to its standard playbook—delaying and obstructing until it can come up with some new chicanery to shut down Kalshi's lawful markets.

　　　**3.**　　**Injury to Kalshi.**  On the other side of the equitable scale, granting the Commission's extraordinary request would irreparably injure Kalshi, those who wish to trade its lawful contracts, and the public at large.

　　　This Court's Order makes clear that the CFTC has already unlawfully banned Kalshi's contracts for over a year since their June 2023 self-certification (and another year if one considers Kalshi's 2022 submission that the agency strung along).  Now, the CFTC seeks to inflict additional harm, potentially mooting the contracts for the current election cycle if the agency can run out the clock.  With the relevant elections less than 60 days away, any day that passes while this Court's Order is stayed would impose serious harm on Kalshi that cannot be undone.  And there would be *no way* to unwind the clock and allow Kalshi to recover the time during which its contracts are blocked by unlawful agency action—let alone the significant time and money that the company has invested in these contracts.

The Commission tries to minimize the harm by observing that Kalshi also lists non-election contracts.  The comparison is specious.  Kalshi has staked its future on political event markets.  And as Kalshi has waited for the litigation process to run its course, unregulated operations like Polymarket have taken advantage of that time to dominate the market.  *See, e.g.*, Sean Carter, *From Presidential Races to Popcorn Flicks: How Polymarket Predicts the Future*, FORBES (July 25, 2024) (noting that "more than \$380 million in bets have been placed on the outcome of the U.S. presidential election alone" on Polymarket).  Further delays may make it impossible for Kalshi to meaningfully compete in this space.

Kalshi is grateful that the Court adhered to the timeline it requested at the outset of the litigation.  The purpose of that timeline was to ensure that Kalshi could secure meaningful relief before the elections.  To backtrack and stay the Order now would undo all of that, causing irreparable harm to Kalshi and the public.

**4.     *Public interest.*** As Kalshi and commenters have explained, the public has much to gain from these contracts.  Academics, investors, former CFTC and SEC officials, human-rights activists, businesses, and nonprofits have all expressed support for the Congressional Control Contracts.[1]  These commenters have attested to the economic and informational value of political event contracts generally and the Congressional Control Contracts specifically.[2]  Many have attested that they would

---

[1] *See, e.g.*, AR 1312–23, 1378–79, 1380–82, 1388–90, 1392–1403, 1404–05, 1443–45, 1448–53, 1474–75, 1477–81, 1527–29, 1537–38, 1541–45, 1549–52, 1555–57, 1558–60, 1573–78, 1584–85, 1602, 1616–23, 1744, 1745–46.

[2] *See, e.g.*, AR 1413–41, 1474–75, 1477–81; 1527–29, 2277–345.

actually buy Congressional Control Contracts to hedge risk.[3]  Others have discussed the many informational benefits that these types of markets generate for the public.[4]  The public has already been denied these benefits for over a year, while the CFTC's unlawful order was in place.  And with the election now fewer than 60 days away, there has never been a more important time for those benefits to materialize.

All of the CFTC's purported concerns with these contracts are unfounded for the reasons discussed in Kalshi's briefs (ECF 17-1 at 41–44; ECF 35 at 29–32), and further belied by the ongoing operation of other election-prediction markets.  More important, the Court's Order necessarily determined that Congress did not empower the Commission to block these contracts as involving "unlawful activity" or "gaming."  So the only proposition that really matters is that it does not serve "the public interest" to "permit agencies to act unlawfully *even in pursuit of desirable ends*."  *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 766 (2021) (emphasis added).

Finally, it is also worth observing that the CFTC's own conduct is inconsistent with its current request for emergency relief.  As this Court knows, Kalshi has consistently communicated its need for relief in advance of the November election (*see* ECF 14 at 2; ECF 36 at 3), and this Court has acknowledged the need for that timely relief.  So the CFTC has known for months that an adverse decision, if it transpired, would arrive in short order.  Yet the agency has seemingly taken no proactive steps

---

[3] *See, e.g.*, AR 1348, 1375–76, 1386–87, 1391, 1532, 1533, 1539–40, 1590–91, 1597, 1613, 3367.

[4] *See, e.g.*, AR 1392–93, 1550–52, 2991–93.

to prepare for this result.  Instead, it now asks the Court for another two-plus week delay—nearly *a quarter* of the remaining time before the elections—while reserving the right to ask for further delays once that period expires.  This certainly looks like an attempt to run out the clock, as the agency has done in the past, and thus win in practice even after losing in court.  The Court should not indulge it.

*          *          *

In the end, none of the factors supports the Commission's "hail Mary" request. Marc Hochstein, *CFTC Pleads With Judge to Block Kalshi Election Contracts for 14 Days*, COINDESK (Sept. 7, 2024).  The Court has reached a considered judgment that is plainly correct on the merits and would easily withstand any appeal.  The agency cannot explain why it would suffer cognizable irreparable harm without a stay.  Yet a stay would impair Kalshi's now-vindicated interests, inflict irreparable competitive injury, deprive the public of the benefit of the ability to trade these contracts on a regulated exchange, and potentially even moot the contracts for the entire election cycle if the agency persists in obstructionist tactics.  Kalshi played by the rules and turned every square corner in awaiting this Court's Order.  It is now time for the Commission to respect that judgment.

**CONCLUSION**

This Court should deny the CFTC's emergency motion for a stay.

Dated: September 8, 2024

Respectfully submitted,

/s/ *Yaakov M. Roth*

Joshua B. Sterling
(D.C. Bar 479320)
MILBANK LLP
1850 K St. N.W.
Washington, DC 20006
(202) 835-7537

Yaakov M. Roth (D.C. Bar 995090)
John Henry Thompson (D.C. Bar 90013831)
JONES DAY
51 Louisiana Avenue N.W.
Washington, DC 20001
(202) 879-3939

Amanda K. Rice (D.C. Bar 1019208)
JONES DAY
150 W. Jefferson Avenue,
Suite 2100
Detroit, MI 48226
(313) 733-3939

Samuel V. Lioi (*pro hac vice*)
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
(216) 586-3939

*Counsel for Plaintiff*
*KalshiEx LLC*