IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KALSHIEX LLC,<br><br>   Plaintiff,<br><br> v.<br><br>COMMODITY FUTURES TRADING COMMISSION,<br><br>   Defendant. | Civil Action No. 1:23-cv-03257 (JMC) |

**Defendant Commodity Futures Trading Commission's
Reply in Support of Emergency Motion for a Stay**

  A registered U.S. futures exchange is about to launch election gambling on its website such that U.S. customers can, for the first time on such an exchange, place bets on the outcomes of elections right in the heart of election season, in some cases wagering up to $100 million. This Court has ruled against the CFTC, but has not yet said what the Commission did wrong. Kalshi protests that it should be allowed to immediately begin trading these contracts because it has waited long enough and should be able to pursue its business, heedless of the public interests indicating that election gambling poses threats to election integrity and the perception of election integrity. Kalshi also accuses the CFTC of just trying to stall. The Commission's motion is not a mere delay tactic. On the contrary, a short stay to enable the Court to issue its memorandum opinion and to enable this Court, or potentially the D.C. Circuit, to evaluate a fully briefed motion for stay pending appeal, is the prudent course, and is a routine mechanism to allow the orderly administration of cases such as this one.

  As of this filing, Kalshi has not informed CFTC staff about its listing intentions. It appears that Kalshi may be of the view that it may list its election contracts for trading immediately, based

upon vacatur of the Commission's order that denied its June 12, 2023 self-certification. 17 C.F.R. § 40.2. The Commission believes Kalshi may intend to list the election contracts imminently, without further self-certification (or, apparently, any notification to the court in its response to the CFTC's motion or otherwise). Thus, without a stay, the relevant election contracts may begin trading before the CFTC has had the opportunity to file a notice of appeal or obtain a stay pending appeal. Accordingly, the time sensitivity of this motion remains acute. The CFTC respectfully requests that the Court immediately issue a stay pending resolution of this motion.

The CFTC's requested relief is essentially an administrative stay. Courts commonly grant an administrative stay pending resolution of, for instance, a motion for stay pending appeal, either on their own motion or at the behest of one of the parties. *Nat'l Urban League v. Ross*, 977 F.3d 698, 700-01 (9th Cir. 2020) (considering the government's emergency motion for an administrative stay); *United States v. Texas*, 97 F.4th 268, 274 (5th Cir. 2024) (noting the panel had granted an administrative stay upon the motion of the defendants); *Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 762 Fed. Appx. 7, 8 (D.C. Cir. 2019) (noting an administrative stay on the Court's own motion).

An administrative stay "freeze[s] legal proceedings until the court can rule on a party's request for expedited relief." *United States v. Texas*, 144 S. Ct 797, 798 (2024). While a stay pending an appeal requires the consideration of the *Nken* factors, an administrative stay "buys the court time to deliberate." *Id.* Here, the Court has not issued its memorandum opinion. And the CFTC has thus not been able to evaluate the Court's opinion and properly file a motion for stay pending appeal. A limited stay is appropriate to enable both.

Administrative stays are not controlled by the *Nken* factors, but may reference them. Because an administrative stay holds the status quo while courts consider motions such as those for a stay pending appeal, "the *Nken* factors are obviously on the court's radar, and unsurprisingly, they

can influence the stopgap decision, even if they do not control it." *See United States v. Texas*, 144 S. Ct. at 799. Rather, the point of an administrative stay is to "minimize harm while [a] court deliberates." *See United States v. Texas*, 144 S .Ct. at 799.

Here, the CFTC submits that it would minimize harm to stay the order while the Court deliberates and issues its reasoned opinion, and to give the CFTC and potentially the D.C. Circuit adequate time should appellate court involvement be required.[1] As it is without a stay, Kalshi's contracts may trade imminently, despite that gambling on the outcome of elections has long been unlawful in this country and never before been permitted on financial markets overseen by the CFTC. The contracts, according to Kalshi's own experts, could be manipulated in the short-term, causing potential consequences for the integrity of elections, such as influencing early voting turnout, or the perception of election integrity. These grave concerns should factor in favor of a short administrative stay to preserve the status quo.

Further, a stay is warranted under the *Nken* factors, which are not controlling but can influence the decision. First, without a reasoned opinion, the CFTC is prejudiced because it cannot submit an argument on likelihood of success on the merits. Second, the Commission will be irreparably injured absent a stay based upon its own injury deriving from the uncertainty of the Court's decision and the injury to its mission to protect the public. The Commission's injury and the public interest, typically separate *Nken* factors, merge when the government is a party. *See Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (stating, in evaluating the denial of a preliminary injunction against the government "in this case, the FEC's harm and the public interest are one and the same, because the government's interest *is* the public interest"). One

---

[1] The appellate posture of this case is also procedurally complicated, because despite the Court's statement that the September 6 order is final and appealable, a notice of appeal is a jurisdictional event that would very likely deprive this Court of jurisdiction to even enter the memorandum opinion. This is yet another reason a brief stay is warranted.

purpose of the Commodity Exchange Act is preventing disruptions to market integrity. 7 U.S.C. § 5. Were the trading to commence in the election contracts and then the Commission received a stay pending appeal, this would be a disruptive market event. Preserving the status quo for a short administrative period would thus protect that public interest.

The remaining public interests were set out at length in the Commission's summary judgment briefing, which the Commission will not belabor here, but involve very serious concerns about election integrity.[2]

Moreover, the Commission is injured because, without the rationale behind Court's decision, it cannot adequately evaluate its next course of action. The potential that the Court may base its decision on a variety of grounds could require different Commission actions, something that the Commission should be allowed to evaluate for some reasonable amount of time without a potential disruptive market event.

In addition to the injury to the public interest, as the CFTC noted in its motion, if trading of election contracts commences, the CFTC will have very limited recourse to halt trading or otherwise unwind contracts that are already trading. *See* 17 C.F.R. § 40.2(c). Kalshi downplays this risk by citing the Commission's general authority to regulate event contracts and suggesting the CFTC could simply unwind the contracts. However, when CFTC staff withdrew a no-action letter issued to PredictIt, traders in those contracts obtained an injunction against the CFTC that prevented the wind-down of that market. *Clarke v. CFTC*, 74 F.4th 627 (5th Cir. 2023). Thus, there is a real risk that if the contracts begin trading, the CFTC will be prevented from unwinding them. Kalshi downplays this risk, but its own conduct suggests that it is racing to trade the contracts so that they

---

[2] Indeed, there are reports of recent attempted manipulation in the election event contracts offered on Polymarket. *See* Rajiv Sethi, *A Failed Attempt at Market Manipulation*, https://rajivsethi.substack.com/p/a-failed-attempt-at-prediction-market (Sept. 7, 2024) (last visited September 9, 2024).

will be difficult if not impossible to stop later, or indeed to prevent the CFTC from ever obtaining a stay pending appeal.

As to injury to other parties, Kalshi cannot establish substantial harm from an administrative stay. A temporary stay, pending the issuance of the Court's opinion and the CFTC's ability to move for a stay pending appeal, will not substantially injure Kalshi. Kalshi requested a ruling so that the relevant contracts could be listed prior to the election. *See* May 30, 2024 Tr. 2-3. There was never any magic to September 6, 2024, as Kalshi intimated to the Court in its advocacy and its email. If anything, the date was Kalshi's attempt to preserve its own appellate rights. In the Joint Motion for Entry of Scheduling Order and for Other Relief, Kalshi requested the Court to issue its decision by September 6, 2024, stating that "meaningful relief for the upcoming election cycle is only possible if the case is adjudicated reasonably in advance of the 2024 congressional elections, **with sufficient time to seek expedited interim relief** in the Court of Appeals if necessary." See Dkt. 14 at 2 (emphasis added). At oral argument, Kalshi reiterated its request for a decision from this Court within sixty days of the election precisely so they could seek appellate review if they did not prevail. *See* May 30, 2024 Tr. 2-3. Now that Kalshi has prevailed, it is racing to list the contracts, irrespective of previously expressed appellate concerns.

Kalshi simply made a business decision to attempt to get the election contracts trading in this election cycle. But whether the contracts list immediately or after a stay, the difference to Kalshi is simply the fees from the trading. Even if Kalshi is stayed from immediately listing its proposed contracts in the near term, it is poised to profit on such contracts at the conclusion of any stay, and at the conclusion of any appeal in this case to the extent it continues to prevail in court.

Kalshi nevertheless claims injury by alleging that the CFTC's request is part of a pattern of delay designed to "inflict additional harm" or "run out the clock." In this regard, Kalshi falsely accuses the Commission of "obstructing" or delaying the review of its 2022 election contract. *See*

5

Response at 2, 6 (stating that the Commission "strung along" Kalshi's 2022 contract submission). But, as Kalshi must know, it was Kalshi that sought multiple extensions of the Commission's 2022 contract review period.  AR 3197 (letter dated November 22, 2022 requesting an extension until January 23, 2023), 3215 (letter dated January 6, 2023 requesting an extension of the Commission's review period until March 23, 2023), 3267 (letter dated March 15, 2023 requesting an extension of the review period until May 22, 2023). Ultimately, Kalshi withdrew the 2022 Submission.  AR 3275 (letter dated May 16, 2023 withdrawing the submission).  Shortly thereafter, Kalshi made the 2023 Submission, and the Commission then acted promptly on it:  Kalshi certified the 2023 contract on June 12, 2023, the Commission issued the relevant order on September 22, 2023.  Kalshi then waited over a month to bring this lawsuit, presumably spending the time assessing the Commission order and determining how to proceed.  The CFTC's 14-day request by comparison, hardly seems unreasonable.

Kalshi also contends that it has already been harmed because operations like Polymarket have be able to dominate the market for political event contracts during this litigation. However, Polymarket is not registered with the CFTC and is, therefore, prohibited from offering any event contracts to U.S. customers,[3] and it was ordered in January 2022 to cease and desist offering off-exchange event contracts while failing to obtain designation as a DCM or a swap execution facility.[4] In fact, no registered DCM lawfully offers political event contracts in the United States.

Finally, Kalshi asserts harm because it has purportedly staked its future on political event contracts.  Kalshi fails to substantiate this claim, and it is a questionable claim in light of Kalshi's seemingly robust listing of hundreds of other non-political event contracts on its exchange.

---

[3] *Compliance Update — January 2022*, POLYMARKET, https://polymarket.medium.com/compliance-update-january-2022-9d5337ffdab8 (Jan. 12, 2022).

[4] *CFTC Orders Event-Based Binary Options Markets Operator to Pay $1.4 Million Penalty*, CFTC, https://www.cftc.gov/PressRoom/PressReleases/8478-22 (Jan. 3, 2022).

For the reasons stated above, the CFTC respectfully requests a stay of the Court's vacatur of the CFTC's September 22, 2023 order prohibiting Kalshi from listing its election contracts for trading until two weeks (14 days) after the Court issues its reasoned opinion, so the CFTC can appropriately assess its appeal options and file a full motion for stay pending any forthcoming appeal. This administrative stay would preserve the status quo; enable the Court, the Commission, and potentially the D.C. Circuit, adequate time to deliberate; and not present substantial harm to Kalshi.

Dated: September 9, 2024                                   Respectfully submitted,

*/s/ Anne W. Stukes*
Anne W. Stukes
  *Deputy General Counsel*

Robert A. Schwartz,
  *General Counsel*
Raagnee Beri
  *Senior Assistant General Counsel*
Margaret P. Aisenbrey
  *Senior Assistant General Counsel*
Conor B. Daly
  *Counsel*
Commodity Futures Trading Commission
1155 21st Street, NW
Washington, D.C. 20581-0001
Phone: (202) 418-5127
astukes@cftc.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2024, I served the foregoing on counsel of record using this Court's CM/ECF system.

/s/ Anne W. Stukes